# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

JILL DECERBO, on Behalf of Herself and )
all Others Similarly Situated, and the )
General Public, )
                                 )
               Plaintiff, )
                                 )
    vs. )
                                   )
MELITTA USA INC., )
                                   )
               Defendant. )
_____ )

No. **8:16 cv 850 T 17 EAJ**

CLASS ACTION COMPLAINT

AND DEMAND FOR JURY TRIAL

Plaintiff Jill Decerbo, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Melitta USA Inc., Defendant, and upon information and belief and investigation of counsel, alleges as follows:

### JURISDICTION AND VENUE

1.    Venue is proper in this Court because Defendant is a Florida corporation and has its headquarters in Clearwater, Florida. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because plaintiff suffered injuries as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, and Defendant is authorized to conduct business in this District, has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District; and is subject to personal jurisdiction in this District.

- 1 -

TRA-36028
$400

2. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class reside in a state other than the state in which Defendant is a citizen. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## NATURE OF THE ACTION

3. Defendant manufactures, advertises, markets, and sells varieties of flavored coffee in cans, bags, and single-serving pods (collectively the "Product" or "Products").

4. The Products are advertised and labeled as, for example, "Hazelnut Creme" Medium Roast or "French Vanilla".

5. Under FDA regulations, each of these flavors as identified on the front label of the Products is referred to as the "characterizing flavor" of the product. 21 CFR § 101.22.

6. Pursuant to FDA regulations, a product's front label must disclose explicitly and prominently whether the product's characterizing flavor is created through the use of natural or artificial ingredients. The words "artificial" or "artificially flavored" must appear with the name of the characterizing flavor in the type size specified and with no intervening text. Id.

7. These Products' characterizing flavors are not created by use of the natural ingredients suggested by the Products' labels. Each Product's ingredient list discloses that it is instead flavored with compounds identified as "natural and/or artificial flavor." These Products in fact owe their characterizing flavors to Defendant's covert use of artificial flavors.

8. The front of the Products' packaging does not accurately or lawfully disclose this critical fact, as required by law.

9.      Instead, Defendant's entire packaging, labeling, and marketing scheme is intended to give consumers the false or deceptive impression that they are buying a premium, naturally-flavored, "gourmet" product.

10.      Defendant uses phrases like, "Buttery Rich Flavor of Wild Hazelnuts" on the Product's front label to suggest to the consumer that this is a superior product with premium, natural ingredients.

11.      In fact, the Product is inexpensive coffee with added artificial flavoring.

12.      Plaintiff, who was deceived by Defendant's unlawful conduct, brings this action to remedy Defendant's unlawful acts.

13.      Plaintiff purchased and consumed the Product multiple times in New Jersey during the Class Period defined herein.

14.      On behalf of the class as defined herein, Plaintiff seeks an order compelling Defendant to, inter alia: (1) cease manufacturing, distributing, and selling the Product in packaging that fails to comply with FDA regulations and New Jersey consumer protection law; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive packaging materials; (4) award Plaintiff and other Class-members restitution, actual damages, and punitive damages; and (5) pay costs, expenses, and attorney fees.

## PARTIES

15.      Defendant Melitta USA, Inc. is a Florida corporation with its principal place of business in Clearwater, Florida.

16.      Defendant owns, manufactures, advertises, distributes, and sells the Products.

17.     Defendant distributes and sells the Products in New Jersey, and Florida, and throughout the United States.

18.     Plaintiff Jill Decerbo is a resident of New Jersey who purchased the Products in New Jersey for personal and household consumption.

## PLAINTIFF'S PURCHASES OF THE PRODUCTS

19.     Plaintiff Jill Decerbo purchased Defendant's Hazelnut Crème and French Vanilla Melitta ground coffee during the Class Period defined herein.

20.     Ms. Decerbo purchased the Product regularly over the past four years, primarily purchasing at a Shoprite store in Stanhope, New Jersey.

21.     Plaintiff first discovered Defendant' unlawful acts described herein in early 2016, when she learned that the Product's characterizing flavor was deceptively created or supplemented using artificial flavoring in addition to possible natural flavors, even though Defendant failed to disclose the complete facts on the Product's front label.

22.     As would a reasonable consumer, Plaintiff was deceived by and relied upon the Product's front label representations that it contained only natural flavorings.

23.     Plaintiff, as a reasonable consumer, is not required to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the fine print for information that federal regulations require be displayed prominently on the front – and, in fact, under state law is entitled to rely on statements that Defendant deliberately places on the Products' labeling. Defendant, but not Plaintiff, knew that this labeling was per se in violation of federal regulations and state law.

24.     Because Plaintiff assumed the Product to be free of artificial flavoring when it was not, she did not receive the benefit of her purchases. Instead of receiving the benefit of products free of artificial flavoring, she received a Product that was unlawfully labeled so as to deceive the consumer into believing that it is exclusively naturally flavored and contained no artificial flavoring, in violation of federal and state labeling regulations. If she had known the full truth, Plaintiff would either have purchased another product or not paid as much for the Melitta Products.

25.     Plaintiff intends to, desires to, and will purchase the Product again when she is able to do so with the assurance that Products' labeling conveying that the Products are naturally flavored is lawful and consonant with the Products' ingredients.

## DEFENDANT DECEPTIVELY FAILED TO DISCLOSE THAT THE PRODUCT CONTAINED ARTIFICIAL FLAVORING

26.     During the Class Period, the Products were flavored with artificial flavoring and Defendant unlawfully failed to disclose this on the front of the Products as required by federal statute and state law.

 

27.     Defendant omitted the legally-required front labeling of their Products as "artificially flavored" for the express purpose of deceiving consumers.

28.     But Melitta knows that it is require to accurately disclose its use of artificial flavoring on the front of its coffee packaging, as demonstrated by its own lawfully labeled coffee products under its "Café de Europa" brand:



29.     On information and belief, Products that Defendant misleadingly labeled include, without limitation, the varieties of:  Hazelnut Crème, Hazelnut Crème Decaf;  Pumpkin Spice ("Delicious Pumpkin Flavor with Notes of Nutmeg & Cinnamon"); "Home for the Holidays" ("Blend of Vanilla, Coconut, buttery Caramel and Sweet Nuts"); French Vanilla; Parisian Vanilla; Vanilla Crème Brulee; and Vanilla Hazelnut (the "Products").

30.     All of these Products' labels are misleading and unlawful. "Hazelnut Crème" is not flavored with hazelnuts, there is no vanilla in "French Vanilla," and "Pumpkin Spice" flavor

contains neither nutmeg nor cinnamon, or pumpkin or any customary pumpkin spice either, as these Products' labels would explicitly lead a consumer to conclude.

31.    The United States Food and Drug Administration regulations require that a food label accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food and its characterizing properties or ingredients. 21 C.F.R. 102.5(a).

32.    The label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c). Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

33.    FDA regulations further provide that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor" and one of the following tests must be met: (1) the food must contain the characterizing food ingredient, e.g., strawberries in 'strawberry shortcake' in an amount sufficient to independently characterize the food, (2) if the ingredient is present but insufficient to independently characterize the food, the word natural flavor must be present, (3) if the flavor is simulated by being derived from another product, then the product must be labelled either with the flavor of the product from which the flavor is actually derived or as "artificially

flavored," and (4) if any artificial flavor is present which simulates, resembles or reinforces the characterizing flavor, the food must be labelled "artificially flavored." 21 C.F.R. 101.22(i).

34.     Further, FDA regulations specify the front display panel labeling panel for food products containing both natural and artificial flavors; such flavors must be labeled appropriately in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

35.     New Jersey has adopted and incorporated the requirements of 21 C.F.R. § 101, et seq. as the law of its state. 21 N.J.S.A. § 8:21-1.3. Plaintiff and the class seek to enforce the N.J. Statute.

36.     When purchasing the Products, Plaintiff and the class were seeking a product of particular qualities, including one that was flavored only with the natural ingredients implied by the label, and which did not contain artificial flavoring instead of or in addition to those ingredients. Indeed, this is the purpose of the regulation requiring front label disclosures.

37.     As reasonable consumers, Plaintiff and the class purchased the Products believing they had the qualities they sought, based on the Products' deceptive labeling and unlawful failure to disclose that they were, even partially, artificially flavored.

38.     Plaintiff and the class lost money as a result of Defendant's conduct because they purchased Products that were not actually flavored with natural flavorings comprising the characterizing flavors, or were only partially flavored with natural ingredients, because the Products' labels failed to disclose this and further implied that the Product contained only natural ingredients. Had Defendant not violated the law, Plaintiffs and the class would not have been injured.

39. Plaintiff and the class would not have purchased the Products absent Defendant' misrepresentations and omissions, or would have paid much less for them.

40. The Products cost more than similar products without the misleading labeling and non-disclosures, and would have cost less absent Defendant' false and misleading statements and omissions. Thus, the Products were worth less than what Plaintiff and the class paid for them.

41. Like most consumers, Plaintiffs and class members are busy persons and cannot reasonably inspect every ingredient of every food that they purchase, and were unaware that the Products contained artificial flavoring when they purchased them.

42. Plaintiff and the class lost money as a result of Defendant's unlawful behavior. Plaintiff and the class altered their position to their detriment and suffered loss in an amount equal to the amount paid for the Products.

43. Defendant's decision to label all of these Products incorrectly and deceptively, concealing and deliberately omitting from the Products' principal display panels the fact that the Products are artificially flavored, was an intentional choice to deceive the consumer and represent the Products as if they were flavored only with natural ingredients rather than with artificial flavorings or some combination of natural and artificial flavoring.

## COMPETITORS LABEL THEIR PRODUCTS LAWFULLY

44. Defendant not only deceives consumers but also gains an unfair commercial advantage in the marketplace by unlawfully and deceptively labeling their Products.

45. Manufacturers of competing flavored coffee products have responsibly decided to correctly label their products. Indeed, Defendant knows it is deceptively labeling the Products since its Café de Europa blends are honestly and lawfully labeled.

46.     Folgers, Dunkin Donuts, Maxwell House, and General Foods, to name a few, all lawfully, accurately, and prominently label their flavored coffee products as artificially flavored.

47.     Other competing manufacturers, offering products whose labels suggest as Defendant's do that their products are naturally flavored, truly are flavored only with natural ingredients.

48.     Defendant, however, elects instead to conceal their use of artificial flavoring in the Products in order to deceive a certain targeted audience of consumers, unlawfully cut costs and increase profits, and compete unfairly and unlawfully in the marketplace.

49.     Defendant's conduct therefore also injures competing manufacturers of flavored coffees, both those that are artificially flavored and those that are naturally flavored, that do not engage in the same unlawful, unfair, and immoral behavior. All of these manufacturers compete for market share and limited retail shelf space for such products. Defendant's competitors do so lawfully. Defendant does not.

## DELAYED DISCOVERY

50.     Plaintiff and class members did not discover that Defendant' labeling of the Products was false, deceptive, or misleading until approximately February 2016, when they learned the Product contained artificial flavoring. Until this time, they lacked knowledge regarding the facts of their claims against Defendant.

51.     Plaintiff and the class consists of reasonably diligent consumers who exercised reasonable diligence in their purchase, use, and consumption of the Products. Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on a

manufacturer's obligation to label its products in compliance with federal regulations and state law.

52.     Furthermore, Defendant's labeling practices and non-disclosures—in particular, failing to disclose that the Product contained artificial flavoring—impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

## DEFENDANT VIOLATED THE NEW JERSEY CONSUMER FRAUD ACT

53.     The NJCFA makes unlawful the use of fraud in connection with the sale or advertisement of merchandise. N.J.S. 56:8-2.

54.     Under the NJCFA, the ". . . act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or  with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

55.     Defendant's conduct, in deliberately failing to label the Products in accord with federal labeling regulations and omitting the required information regarding artificial flavoring, constitutes all of unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, and knowing concealment or omission of a material fact.

56.     Further, Defendant intended for consumers including the Plaintiff and the proposed Class to be deceived thereby.

57. Defendant violated the New Jersey Consumer Fraud Act.

58. As a result of Defendant's violations of the NJCFA, Plaintiff and the Class suffered ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed Products, which they would not have paid had the Products been labelled correctly, and in the form of the reduced value of the Products in relation to the Products as advertised.

## DEFENDANT VIOLATED THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT FRAUD ACT

59. The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, (N.J.S.A. 56:12-14, et seq), makes it unlawful to "offer to any consumer or prospective consumer . . . or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law ...."

60. As described above, Defendant violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act by offering Products for sale that violated clearly established consumer legal rights and seller responsibilities.

## DEFENDANT ALSO BREACHED EXPRESS AND IMPLIED WARRANTIES

61. Defendant's label representations also created express and implied warranties which Defendant breached.

62. The Product's front label misleadingly conveys that the Product is flavored with the natural ingredients described by each Product's characterizing flavor. This promise became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendant breached, causing damage to class members and the Plaintiff.

- 8 -

63.     Those label representations also created implied warranties that the product was suitable for use as a naturally-flavored coffee product, which Defendant further breached, causing damage to Plaintiff and the class.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class"), excluding Defendant' officers, directors, employees, and the Court and its staff.

65.     The Class is provisionally defined as follows:

All persons who purchased the Products in the State of New Jersey and other states in the United States which have consumer protection laws similar to New Jersey, on or after March 29, 2010 until the present.

66.     Questions of law and fact common to Plaintiff and the Class include:

(a)     Whether Defendant's conduct constitutes a violation of the New Jersey Consumer Fraud Act;

(b)     Whether Defendant' conduct constitutes an affirmative misrepresentation to consumers;

(c)     Whether Defendant' conduct constitutes a knowing concealment, suppression or omission of material fact;

(d)     Whether Defendant' conduct constitutes a violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act;

(e)     Whether Defendant' conduct violates the New Jersey Code, which incorporates as the law of its state 21 C.F.R. § 101, et seq.;

(f)     Whether the Class is entitled to actual damages, restitution, rescission, punitive damages, attorney fees and costs, and an injunction;

(g)     Whether the Class is entitled to statutory damages;

(h)     Whether the Class is entitled to treble damages;

(i)     Whether the statute of limitations should be tolled on behalf of the Class;

(j)     Whether members of the Class are entitled to an injunction and, if so, its terms; and

(k)     Whether members of the Class are entitled to any further relief.

67.     Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

68.     The Class is sufficiently numerous, as it includes thousands of individuals who purchased the Product throughout the United States during the Class Period.

69.     Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as $4 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

70.     Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

71.     Questions of law and fact common to the Class predominate over any questions affecting only individual members.

72.     Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## COUNT I

### Violations of the New Jersey Consumer Fraud Act

73.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

74.     Plaintiff's and the Class' are purchasers of the Products.

75.     The Products are all "merchandise" within the meaning of the New Jersey Consumer Fraud Act.

76.     Defendant conducts a significant amount of commerce in New Jersey.

77.     As described herein, Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the New Jersey Consumer Fraud Act (NJCFA), which prohibits, in connection with the sale or advertisement of merchandise, ". . . the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . ."

78.     Defendant deliberately labeled the Products in violation of state regulations requiring truth in labeling.

79.     Defendant consciously failed to disclose material facts to Plaintiff and the Class in Defendant's advertising and marketing of the Products.

80.     Defendant' conduct is unconscionable because it violates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include:

A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

81.     Defendant's conduct is "unconscionable" because it violates, inter alia, 21 C.F.R. § 101.22(c) and 21 C.F.R. § 101.22(i) (as incorporated into New Jersey law via 21 N.J.S.A. § 8:21-1.3), which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

82.     Defendant further violates the implementing regulation, 21 C.F.R. § 1.21, because the Product's front label fails to reveal material facts, namely that the Product's characterizing flavor is created by artificial flavoring, which is false and deceptive under the NJCFA.

83.     Defendant' conduct is further unconscionable as it violates New Jersey food labeling regulations, inter alia, 21 C.F.R. § 102.5 (as incorporated in New Jersey via 21 N.J.S.A. § 8:21-1.3), because the Products' labels do not include:

a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such

ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food. 21 C.F.R. § 102.5(c).

84.     Defendant's unconscionable conduct described herein included these omissions and the concealment of material facts regarding the Products in product advertising and marketing.

85.     Defendant intended that Plaintiff and the Class rely on Defendant's acts of omissions so that Plaintiff and the other Class members would purchase the Products.

86.     Had Defendant disclosed all material information regarding the Products in its advertising and marketing, Plaintiff and the Class would not have purchased the Products or would have paid less for the Products.

87.     Plaintiff and the class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase the Product based on Defendant's violation of the NJCFA and the Federal regulations as incorporated into New Jersey law, or to purchase the Products in favor of competitor products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

88.     The acts, omissions and practices of Defendant detailed herein proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, inter alia, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

89.     As a result, Plaintiff and the class have suffered an ascertainable loss of moneys and pursuant to N.J. Stat. § 56:8-19 are entitled to threefold damages.

## COUNT II

### Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

90.     Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

91.     Defendant made and distributed, in New Jersey and in interstate commerce, a Product that unlawfully fails to disclose artificial flavoring on its packaging as required by federal food labeling regulations.

92.     Defendant's conduct violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.

93.     The TCCWNA makes it unlawful to "offer to any consumer or prospective consumer . . . or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law ...."

94.     Defendant's conduct as described herein violated Plaintiff's and the Class's clearly established legal right to have the Products labeled in accordance with state law.

95.     Anyone who violates the TCCWNA is "liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both," plus reasonable attorneys' fees and costs.

96. Plaintiffs and the Class are therefore entitled to TCCWNA statutory penalties plus attorneys' fees and costs as a result of Defendant's conduct as alleged herein.

## COUNT III

### Breach of Express Warranty

97. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

98. The Product's front label misleadingly asserts that the Product is flavored with the natural ingredients described by each Product's characterizing flavor.

99. This promise became part of the basis of the bargain between Plaintiff and class members and Defendant, and thus constituted an express warranty.

100. Thereon, Defendant sold the goods to Plaintiff and class members who bought the Products from Defendant.

101. However, Defendant breached this express warranty in that the Product is instead flavored with artificial flavorings as to the characterizing flavor or flavors.

102. As a result of this breach, Plaintiff and the class in fact did not receive goods as warranted by Defendant.

103. As a proximate result of this breach of warranty by Defendant, Plaintiff and the class have been damaged in an amount to be determined at trial.

## COUNT IV

### Breach of Implied Warranty

104. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

105.    The Products' front labels misleadingly imply that each of the Products are flavored only with the natural ingredients described by the Products' characterizing flavor.

106.    At the time of purchase, Defendant had reason to know that Plaintiff, as well as all members of the Class, intended to use the Products as naturally-flavored food products.

107.    This implication became part of the basis of the bargain between the parties and thus constituted an implied warranty.

108.    Based on that implied warranty, Defendant sold the goods to Plaintiff and the class who bought the goods from Defendant.

109.    At the time of purchase, Defendant knew or had reason to know that Plaintiff and the Class were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiff justifiably relied on Defendant's skill and judgment.

110.    The Products were not suitable for this purpose. Defendant breached this implied warranty in that the Products are instead flavored with artificial flavorings as the characterizing flavor.

111.    Plaintiff and the class purchased the Products believing they had the qualities Plaintiff and the class sought, based on the deceptive advertising and labeling, but the product was actually unsatisfactory to Plaintiff and the class for the reasons described herein.

112.    As a result of this breach, Plaintiff and the class in fact did not receive goods as warranted by Defendant.

113.    As a proximate result of this breach of warranty by Defendant, Plaintiff and the class have been damaged in an amount to be determined at trial.

114.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant were unjustly enriched.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on her claims for damages. She does not seek a jury trial for her claims in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.    An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.    An order requiring Defendant to pay restitution to Plaintiff and class members so that they may be restored the money which Defendant acquired by means of any unfair, deceptive, unconscionable, fraudulent, and negligent acts;

C.    An order requiring Defendant to disgorge any benefits received from Plaintiff and unjust enrichment realized as a result of its improper and misleading advertising and marketing of the Products;

D.    An order declaring the conduct complained of herein violates the NJCFA;

E.    An order declaring that Defendant's conduct as complained of herein violates the NJTCCWNA;

F.     An order requiring Defendant to pay damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable, fraudulent, or negligent acts;

G.     An award of statutory damages as specified by the NJTCCWNA.

H.     An award of punitive damages in an amount to be proven at trial;

I.     An order enjoining Defendant' deceptive, unconscionable, fraudulent and unfair practices;

J.     An order requiring Defendant to engage in a corrective advertising campaign;

K.     An award of pre-judgment and post-judgment interest;

L.     An award of attorney fees and costs; and

M.     Such other and further relief as this Court may deem just, equitable, or proper;

## CERTIFICATE OF SERVICE UPON THE ATTORNEY GENERAL

In accordance with N.J.S.A. 56:8-20, Plaintiff mailed a copy of this Complaint to the Attorney General at P.O. Box 080, Trenton, NJ 08625-0080 as well as to the Division of Consumer Affairs at P.O. Box 45027, Newark, NJ 07101.

DATED: April 5, 2016          CULLIN O'BRIEN LAW, P.A.
                                     CULLIN A. O'BRIEN
                                     Florida Bar No. 0597341

                                     CULLIN A. O'BRIEN

**CULLIN O'BRIEN LAW, P.A.**
CULLIN A. O'BRIEN
6541 NE 21st Way
Ft. Lauderdale, FL 33308
(561) 676-6370/(561) 320-0285
cullin@cullinobrienlaw.com

**LAW OFFICES OF RONALD
A. MARRON, APLC**
RONALD A. MARRON
ron@consumersadvocates.com
SKYE RESENDES
skye@consumersadvocates.com
WILLIAM B. RICHARDS, JR.
bill@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Telephone:     (619) 696-9006
Facsimile:     (619) 564-6665

**THE LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT
2028 3rd Avenue
San Diego, CA 92101
Telephone:  858-228-7997
elliot.david@hotmail.com

*Attorneys for Plaintiff and the Proposed Class*