UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JILL DECERBO, On Behalf Of Herself
And All Others Similarly Situated, And
The General Public,

    Plaintiff,

v.                                              Case No: 8:16-cv-850-T-17AAS

MELITTA UNITED STATES OF
AMERICA INC.,

    Defendant.

---

**ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

This cause came before the Court pursuant to the *Defendant Melitta USA Inc.'s Motion to Dismiss Class Action Complaint and Incorporated Memorandum of Law* (Doc. No. 21) (the "**Motion to Dismiss**") filed by the Defendant, Melitta USA Inc. (the "**Defendant**" or "**Melitta**"), and the *Plaintiff Jill Decerbo's Memorandum of Law in Opposition to Defendant Melitta USA, Inc.'s Motion to Dismiss Plaintiff's Class Action Complaint* (Doc. No. 25) (the "**Response**") filed by the Plaintiff, Jill Decerbo (the "**Plaintiff**" or "**Decerbo**"). For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

I.    Introduction

There are two primary issues raised by the Motion to Dismiss. The first is whether the Plaintiff, a consumer who alleges that she was deceived by the Defendant's product labeling, has standing to pursue claims based on products that she has ceased buying

and/or has never personally purchased. Second, if so, the issue is whether the Plaintiff has stated a claim under applicable state consumer protection and warranty laws.

With respect to the first issue, the Court believes that based on the allegations in the Plaintiff's Complaint (defined below), the Plaintiff has standing to pursue claims for monetary damages and prospective injunctive relief with respect to products she has actually purchased from the Defendant. However, while the Plaintiff has standing to pursue claims for the "French Vanilla" and "Hazelnut Crème" products she claims to have purchased based on the Defendant's deceptive mislabeling, she lacks standing to pursue claims related to products she never personally purchased.

As to the second issue, it is the Court's opinion that the Plaintiff has failed to state a claim for one simple and elemental reason --- this is a product labeling case --- yet the Plaintiff has failed to attach or incorporate clear, complete and accurate images or descriptions of the allegedly offending product labeling. Absent such allegations, the Court lacks sufficient information from which to determine whether, taken as true, the representations (or lack thereof) on the Defendant's product labeling could plausibly violate state consumer fraud and warranty laws. Thus, for these reasons, as well as for the reasons explained in more detail below, the Complaint must be dismissed with leave to amend.

## II. Background

The Plaintiff commenced this case by filing a *Class Action Complaint* (Doc. No. 1) (the "**Complaint**") against Melitta on April 8, 2016. Through the Complaint, the Plaintiff asserts the following causes of action: Count I – Violations of the New Jersey Consumer Fraud Act (the "**NJCFA**"); Count II – Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (the "**TCCWNA**"); Count III – Breach of Express

Warranty; and Count IV – Breach of Implied Warranty. These claims are based on allegations that the Defendant deceptively mislabeled certain of its flavored coffee products by omitting federally and state mandated language (indicating that its products are artificially flavored) from the "front" of its cylindrically canned "French Vanilla" and "Hazelnut Crème" flavored coffees. (Complaint, at ¶¶ 3-8). The Plaintiff claims that these omissions give rise to a false impression that the Defendant's flavored coffee products are premium, naturally-flavored coffee products, when in fact they are inexpensive coffees with added artificial flavorings. (Complaint, at ¶¶ 11-12). According to the Plaintiff, she would not have purchased the Defendant's flavored coffee products had she known they were derived from artificial flavors, or if she had, she would have paid less for those products. (Complaint, at ¶ 39). Thus, the Plaintiff, along with the class of persons she purports to represent, seeks to be compensated for the "reduced value" of the products she received, as compared to the value of the products as advertised. (Complaint, at ¶ 58).

The Defendant filed its Motion to Dismiss on June 13, 2016. Through the Motion to Dismiss, the Defendant argues, among other things, that the Plaintiff's consumer fraud claims must be dismissed for failure to allege any unlawful conduct by Melitta and for failure to allege an ascertainable loss. In support, the Defendant attaches images of the products at issue, which it claims expressly identify that Melitta's flavored coffee products are made with "Natural and Artificial Flavors." Since its labels are accurate, and because the products are not defective, the Defendant posits that the Plaintiff cannot state a claim for consumer fraud or breach of warranty. The Defendant also argues that the mere fact that its labels may violate federal FDA guidelines, standing alone, does not give rise to a

claim under the NJFCA. Finally, the Defendant argues that the Plaintiff fails to state a claim for breach of warranty based on her failure to allege contractual privity with the Defendant.

The Plaintiff filed her Response on June 29, 2016. Through the Response, the Plaintiff takes issue with the Defendant's interjection of the images of the products' labeling as being outside the pleadings. The Plaintiff also objects to the propriety of taking judicial notice of the product labeling images submitted by the Defendant, arguing that the Defendant has not laid a proper foundation. As to the merits of the Motion to Dismiss, the Plaintiff argues that she has adequately pled her claim for consumer fraud based on alleged affirmative misrepresentations and/or knowing omissions of the products' characterizing flavors, and that the Defendant's alleged violation of FDA regulatory guidelines is sufficient to give rise to a claim under the NJCFA. As to the warranty claims, the Plaintiff similarly argues that the Defendant's labeling makes false affirmations regarding the flavoring of its products and, as a result, that it has stated a claim under New Jersey and similar state laws.

### III. Legal Standard

To satisfy the Rule[1] 8(a)(2) pleading standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating whether a complaint meets the federal pleading standard, the Court is not required to "accept as true" any

---

[1] All references to the "Rules" or to a "Rule" are to the Federal Rules of Civil Procedure.

4

allegations that constitute legal conclusions. *Id.* Once the Court has identified the plaintiff's well-pleaded factual allegations that do not constitute legal conclusions, the Court must determine whether those allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. This, according to the Supreme Court, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"The heightened pleading requirements of [Rule] 9(b) apply to claims under the NJCFA." *In re Toshiba Am. HD DVD Marketing & Sales Prac. Litig.*, 2009 WL 2940081, at *8 (D.N.J. Sept. 11, 2009). "Pursuant to Rule 9(b), a plaintiff . . . must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d. Cir. 2007)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

## IV. Discussion

Through the Motion to Dismiss, the Defendant asks the Court to dismiss the Complaint for the following reasons. First, the Defendant argues that the Plaintiff lacks standing to pursue a claim for prospective injunctive relief based on her allegations that she no longer purchases the Defendant's products. Second, the Defendant asks the Court to dismiss the Complaint to the extent that the Plaintiff is seeking relief related to products she never personally purchased. Third, as to the sufficiency of the Complaint, the Defendant argues that the Plaintiff has failed to state a claim under the NJCFA based on her failure to allege unlawful conduct or an ascertainable loss caused by such conduct. Lastly, the Defendant argues that the Plaintiff has failed to state a claim under applicable warranty law based on her failure to allege the existence of privity with the Defendant,

and/or any affirmative misrepresentation by the Defendant. These arguments are addressed in turn below.

### A. Standing

As noted above, the Defendant makes a two-pronged standing argument. First, the Defendant argues that the Plaintiff lacks standing to pursue claims for prospective injunctive relief given her admission that she has stopped purchasing the Defendant's products. Second, the Defendant argues that the Plaintiff lacks standing to pursue claims related to products the Plaintiff never purchased from the Defendant. For the reasons set forth below, the Court believes the Plaintiff has stated a claim for prospective injunctive relief, but agrees with the Defendant that the Plaintiff lacks standing to pursue claims based on products she never purchased.

#### 1. Injunctive Relief

To have Article III standing, a plaintiff must have suffered an injury-in-fact that is concrete and particularized, and which is actual or imminent, not conjectural or hypothetical. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015). Second, the plaintiff must demonstrate a causal connection between its injury and the defendant's conduct. *Id.* Third, the plaintiff must show that a favorable decision by the court will redress the injury. *Id.* Moreover, "a party only has standing to seek injunctive relief if the party alleges, and ultimately proves, a real and immediate --- as opposed to a merely conjectural or hypothetical --- threat of future injury." *Id.* Importantly, "[t]he requirements of Article III standing do not change merely because a plaintiff is asserting claims under a state law consumer protection statute." *Marty v. Anheuser-Busch Companies, LLC*, 43 F.Supp.3d 1333, 1358 (S.D. Fla. 2014). Thus, while some courts "cite to public policy grounds for finding that Article III standing to seek

6


injunctive relief has been met even where a plaintiff does not intend to purchase the same product again in the future," courts in this circuit are "not persuaded by this line of cases." *Id.*

Here, the Plaintiff alleges that she intends to purchase the Defendant's product again if Melitta ceases its allegedly deceptive conduct. *See* (Complaint, at ¶25) (alleging that "Plaintiff intends to, desires to, and will purchase the Product again when she is able to do so with the assurance that Products' labeling conveying that the Products are naturally flavored is lawful and consonant with the Products' ingredients."). In *Marty*, the court appeared to recognize that allegations of this sort would be sufficient to state a claim for prospective injunctive relief. *See Id.* (providing the plaintiff with an opportunity to file a second amended complaint alleging that the plaintiffs "**would purchase Beck's again if AB ended its deceptive conduct**.") (emphasis in original). Thus, at the pleadings stage, this Court is satisfied that the Plaintiff has satisfied the Article III standing requirement for seeking prospective injunctive relief.

2.   Additional Products

There is a spit of authority among (and within) the circuits regarding whether a plaintiff may state a claim based upon products the class representative did not personally purchase. *See Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *4 (S.D. Fla. 2013). Despite this split of authority, "the law in the Eleventh Circuit is clear that at least one named plaintiff must establish Article III standing for each class subclaim." *Id.* (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000). "In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit." *Id.* Here, the Plaintiff only alleges that she has purchased the Defendant's "French Vanilla" and "Hazelnut Crème" flavored coffee products. *See*

7

(Complaint, at ¶ 19). Thus, the Plaintiff lacks standing to pursue claims related to other flavors in the Defendant's product portfolio.

### B. Consumer Fraud Claims

Through the Complaint, the Plaintiff asserts claims under two separate New Jersey consumer fraud statutes: the NJCFA and the TCCWNA. The Defendant argues that both claims should be dismissed. As to the NJFCFA claim, the Defendant argues that the Plaintiff fails to allege facts sufficient to satisfy the "unlawful conduct" and "ascertainable loss" elements of the NJFCA. As to the TCCWNA claim, the Defendant argues that claim fails as a matter of law due to the Plaintiff's failure to state a claim under the NJCFA. Upon review, the Court agrees with the Defendant's arguments.

#### 1. The NJCFA Claim

"The NJCFA makes it unlawful for 'any person' to use an 'unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise or real estate.'" *In re Toshiba*, 2009 WL 2940081, at *7. "To constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Id.* "To state a claim under the NJCFA, a plaintiff must allege '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Id.*

##### a. Unlawful Conduct

"New Jersey courts have identified three different types of unlawful conduct as covered under the [NJ]CFA: (1) affirmative representations; (2) knowing omissions; and

8

(3) regulation violations." *Mladenov*, 124 F. Supp. 3d at 373. "An affirmative representation is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" *Id.* A knowing omission, on the other hand, occurs where the defendant knowingly conceals a material fact with the intention that the plaintiff rely on such concealment. *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (N.J. App. 2003). "[R]egulation violations" consist of actions that violate the regulations enacted under Section 56:8-4 of the New Jersey Statutes. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-18 (N.J. 1994).

Here, the Complaint lacks well-pled allegations of affirmative misrepresentations, knowing omissions, or regulatory violations sufficient to state a claim under the NJCFA. The reason for this shortcoming is quite simple. The Plaintiff's case rests entirely on misrepresentations, omissions, and/or regulatory violations *contained on the Defendant's packaging*, yet the Plaintiff fails to attach or incorporate clear, accurate, and complete images of the offending packaging. To the contrary, the Plaintiff only makes passing reference to the Defendant's packaging, alleging that "Defendant uses phrases like 'Buttery Rich Flavor of Wild Hazelnuts' on the Product's front label to suggest to the consumer that this is a superior product with premium natural ingredients," but that "[i]n fact, the Product is inexpensive coffee with added artificial flavoring." (Complaint, at ¶¶ 10-11). Moreover, while Plaintiff incorporates images of the Defendant's "French Vanilla" and "Hazelnut Crème" coffee products in paragraph 26 the Complaint, these images are of such a poor quality that they do not reveal the precise representations made on the front of the "French Vanilla" or "Hazelnut Crème" products. The Plaintiff does not even

bother attaching or incorporating images of the back of the "French Vanilla" or "Hazelnut Crème" labeling.

The Plaintiff's failure to incorporate clear and complete images of the allegedly offending labeling is troubling to the Court. Clearly, the representations made on the face of the Defendant's packaging is central to, if not dispositive of, the claims in this lawsuit. By failing to attach or incorporate clear, accurate, and complete images of the allegedly offending packaging, while at the same time objecting to the Defendant's submission of its own images of the products' packaging, the Plaintiff appears to be attempting to skirt around the pleading requirements of the NJCFA. This Court is not keen to make important judgments regarding the sufficiency of the Complaint without having before it a clear, accurate, and complete image of the packaging the Plaintiff contends violates the NJCFA. Having failed to provide the Court with this critical information, the Plaintiff's Complaint is subject to dismissal for failure to state a claim.[2]

### b.  Ascertainable Loss

With respect to the ascertainable loss element, "[t]here are two relevant theories to ascertain losses under the [NJ]CFA: (1) the out-of-pocket-loss theory, and (2) the loss-in-value or benefit-of-the-bargain theory." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015). "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Id.* "A benefit-of-the-bargain theory requires

---

[2] To the extent that the Plaintiff's NJCFA claim is based on alleged "regulation violations," the Plaintiff has failed to respond to the Defendant's argument that violations of FDA regulations (either standing on their own, or incorporated through New Jersey Administrative Code Section 8:21-1.3) cannot serve as the basis for a claimed regulatory violation of the NJCFA. Any amended complaint seeking relief under the NJCFA based on alleged FDA violations must be accompanied by a separate memorandum of law addressing the validity of such claims in light of *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994).

10

that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Id.* "To present a benefit-of-the-bargain claim, a plaintiff must allege '(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonable quantified.'" *Id.* "Failure to quantify this difference in value results in the dismissal of a claim." *Id.* "However, 'Rule 9(b) does not require that a plaintiff allege a specific dollar amount to survive the pleadings stage.'" *Id.*

In the *Toshiba* case, the court dismissed the plaintiffs' NJCFA claim for, among other reasons, failing to allege how much they paid for the "premium" products at issue compared to how much they would have otherwise paid for comparable "regular" products. *In re Toshiba*, 2009 WL 294001, at *13. Absent such allegations, the court determined it was impossible to determine "how much of a 'premium' they claim to have paid" for the products at issue. *Id.* Similarly, in *Mladenov*, the court dismissed the plaintiff's NJCFA claim for "[l]acking any detail as to what Plaintiffs purchased, the cost of those items, and the supposed value of what they received." *Mladenov*, 124 F. Supp. 3d at 376. Here, much like in *Toshiba* and *Mladenov*, the Complaint lacks well-pled factual allegations of how much the Plaintiff paid for the Defendant's products, the supposed value of what they received, and how much comparable products sold for at the time. To the contrary, the Plaintiff cursorily alleges that she paid too much for the Defendant's products, but fails to plead how much of a "price premium" she paid for the products at issue. *See* (Complaint, at ¶ 40) (alleging merely that the Defendant's products "cost more than similar products without the misleading labeling and non-disclosures, and would have cost less absent Defendant' (sic) false and misleading statements and omissions.

Thus, the Products were worth less than what Plaintiff and the class paid for them."). Consequently, the Complaint fails to satisfy the ascertainable loss requirement under the NJCFA and must be dismissed.

    2.    *TCCWNA Claim*

To state a claim under the TCCWNA, the Plaintiff must allege "(1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer contract' or gives or displays any written notice, or sign;' and (4) the contract, notice or sign includes a provision that 'violates any legal right of a consumer' or responsibility of a seller." *Mladenov*, 124 F.Supp.3d at 380. "The TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights." *Id.* Where a plaintiff's TCCWNA claim is premised on an NJCFA claim that is not legally sufficient, the TCCWNA claim also necessarily fails as a matter of law. *Id.* The same holds true for a TCCWNA claim that is based on alleged violations of FDA regulations because FDA regulations do not create any private right of action with respect to such violations. *Id.* Stated differently, a plaintiff may not use the TCCWNA "to bootstrap" an FDA claim that she could not otherwise bring. *Id.* Here, like in *Mladenov*, the Plaintiff's TCCWNA claim is subject to dismissal for failing to allege the violation of a right created by the NJCFA. Thus, Count II will be dismissed with leave to amend consistent with the Court's observations in Section B.1. of this order.

**C.    Warranty Claims**

At the outset, consideration of the Plaintiff's warranty claims implicates a choice of law analysis. In its Motion to Dismiss, the Defendant argues that Florida law, as the law of the forum court, should apply to the Plaintiff's warranty claims. As far as the Court can tell, the Plaintiff does not respond to or address the Defendant's choice of law analysis in

her Response. Thus, the Court is inclined to agree that the warranty claims are governed by Florida law. Nevertheless, since the Court is already dismissing the Complaint with leave to amend, the Plaintiff will be afforded an opportunity to file a separate brief addressing the choice of law analysis contemporaneous with the filing of any first amended complaint. To the extent that the parties agree that Florida law applies, the parties are directed to stipulate as such and include a brief, joint memorandum of law addressing the issue along with the amended complaint.

### 1. *Express Warranty*

As an initial matter, like the Plaintiff's NJCFA claim, the Plaintiff's express warranty claim must also be dismissed for failing to attach or incorporate the allegedly offending labeling. This claim, much like the NJCFA claim, is derived entirely from the representations (or lack thereof) made on the Defendant's packaging. Thus, it is elemental for the Plaintiff to attach or incorporate a clear, complete and accurate image of the Defendant's product. Having failed to do so, the Plaintiff's express warranty claim must be dismissed with leave to amend.

Turning to the Defendant's privity argument, to state a claim for breach of express warranty under Florida law, "the plaintiff must allege injuries sustained by the buyer as a result of the breach of warranty." *Pelkey v. McNeil Consumer Healthcare*, 2011 WL 677424, at *6 (S.D. Fla. Feb. 16, 2011). Section 672.313(1) of the Florida Statutes provides, in pertinent part, that express warranties are created as follows: (a) "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;" and/or (b) "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods

13

shall conform to the description." Fla. Stat. § 672.313(1) (2016). The statutory language does not mention the term "privity," and instead focuses on whether the defendant's statements were "part of the basis of the bargain" between the buyer and seller. Moreover, while the statute does use the terms "seller" and "buyer," the comments to Section 672.313 state that "the warranty sections of this Article are not designed in any way to disturb those lines of case growth which have recognized that warranties need not be confined . . . to the direct parties to such a contract." Comment No. 2, Fla. Stat. § 672.313.

Notably, in *Smith v. Wm. Wrigley Jr. Co.*, the court refused to dismiss a claim for breach of express warranty merely because the plaintiff had purchased the defendant's gum at a local convenience store, and not directly from Wrigley. 663 F.Supp.2d 1336, 1341 (S.D. Fla. 2009). In that case, the plaintiff alleged that the warranty that had been breached was contained on the packaging of the defendant's gum, and that he had relied on the warranty when purchasing the gum. *Id.* at 1443. The court determined that it "need not resolve the issue of whether privity is ever required for express warranty claims" because the issue before the court was "relatively straight-forward." *Id.* at 1343. Since the plaintiff alleged that he had relied on statements contained on the defendant's packaging, he pled sufficient facts to state a claim for breach of warranty, despite the fact that he had not purchased the gum directly from Wrigley. *Id.*

Read in conjunction with Section 672.313(1) of the Florida Statutes, the *Smith* case demonstrates that inflexible rules regarding privity are not always helpful in deciding whether a party has stated a claim for breach of express warranty. Rather, common sense dictates that an express warranty can be created between a manufacturer and

14

purchaser, despite the fact that the parties' transaction flowed through a third-party intermediary. Examples of situations where this could occur include the consumer who relies on statements contained on the packing of a product when making a purchase, whether it be chewing gum or flavored coffee products. Applying the foregoing concepts to the facts of this case, the Court believes that much like in the *Smith* case, the analysis here is relatively straight-forward. The Plaintiff alleges that she relied on representations made on the Defendant's packaging when deciding to purchase its flavored coffee products. Those representations --- if properly plead in accordance with Section B of this order --- along with the Plaintiff's alleged reliance on the same, should be sufficient to state a claim for breach of express warranty under Florida law.

    2.    *Implied Warranty*

With respect to claims for breach of an implied warranty, the Florida Supreme Court's decision in *Kramer v. Piper Aircraft Corp.* makes it clear that there can be no cause of action for breach of an implied warranty without privity of contract. 520 So.2d 37, 40 (Fla. 1988). Nevertheless, some question has arisen regarding whether the *Kramer* decision, which dealt with an action for personal injuries, was intended to overrule the Florida Supreme Court's earlier decision in *Manheim v. Ford Motor Co.*, wherein the court allowed a purchaser to sue a manufacturer for breach of implied warranty --- in the absence of privity --- where the plaintiff was only seeking economic damages. 201 So.2d 440, 441-42 (Fla. 1967).

Although not cited by either party, this Court has already considered the issue in *Powers v. Lazy Days RV Center, Inc.*, and determined that it "is not bound to follow the *Manheim* decision." 2006 WL 373011, at *2 (M.D. Fla. Feb. 16, 2006). Other courts that have considered the same have issue have agreed, noting that post-*Kramer* "a plaintiff

15

cannot recover economic losses for breach of implied warranty in the absence of privity." *Sanchez-Knutson v. Ford Motor Co.*, 52 F.Supp.3d 1223, 1233 (S.D. Fla. 2014). However, while this court no longer applies the *Manheim* exception to the privity rule, some courts have created an exception to the privity rule in implied warranty cases where "the manufacturer's representative had direct contacts with the purchaser." *See Point Blank Solutions, Inc. v. Toyobo America, Inc.*, 2011 WL 1833366, at *4 (S.D. Fla. May 13, 2011). In order for this exception to apply, the plaintiff must allege "personal contacts between the purchaser and the representative of the manufacturer, not merely some contact between the purchaser and the manufacturer's product or advertising." *Foster v. Chattem, Inc.*, 2014 WL 3687129, at *3 (M.D. Fla. July 24, 2014).

Applying the foregoing authorities to the facts alleged in the Complaint, the Plaintiff has failed to state a claim for breach of implied warranty under Florida law. Nowhere in the Complaint does the Plaintiff allege personal contact between her and the Defendant. To the contrary, as referenced previously in this order, the Plaintiff's claim is founded entirely on the Defendant's allegedly deceptive and misleading product packaging. Thus, the Plaintiff's claim for breach of implied warranty must be dismissed. To the extent the Plaintiff can allege facts that fall within the exception to the privity rule noted in *Point Blank Solutions*, or some other comparable exception, the Plaintiff may attempt to reassert this claim through an amended complaint.

**V.   Conclusion**

Accordingly, it is

**Remainder of Page Intentionally Left Blank**

**ORDERED** that the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as set forth above. The Plaintiff shall file any amended complaint correcting the deficiencies noted in this order within 30 days.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 17th day of October, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record