## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JILL DECERBO, on Behalf of Herself and all Other Similarly Situated, and the General Public, | Case No. 8:16-cv-00850-EAK-AAS |
| Plaintiff, | |
| v. | |
| MELITTA USA INC., | |
| Defendant. | |

## DEFENDANT MELITTA USA INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Rule 3.01, Local Rules for the United States District Court for the Middle District of Florida, Defendant Melitta USA Inc. ("Melitta"), moves on the following grounds to dismiss Plaintiff's First Amended Complaint (the "FAC"):

1.      As set forth in detail in the attached and incorporated Memorandum of Law in Support of Melitta's Motion to Dismiss Plaintiff's FAC (the "Memorandum"), the FAC fails to properly state any claim for relief against Melitta.

2.      Accordingly, for the reasons detailed in the Memorandum, the FAC should be dismissed.

1

## MEMORANDUM OF LAW IN SUPPORT OF MELITTA'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff Jill Decerbo's First Amended Complaint ("FAC") is improper, attempting to hide – yet again – the substantial deficiencies in her claims by adding factual allegations and causes of action without leave of court.  Following the initial Complaint, which this Court dismissed with leave to amend due to Plaintiff's obstreperous failure to attach pictures of the product labeling (while at the same time objecting to Defendant Melitta USA Inc.'s ("Melitta") attempt to do so), Plaintiff has completely shifted course to avoid dismissal. Instead of simply attaching pictures of the Product labeling, as the Court ordered her to do, Plaintiff changed the entire theory of her claims, tacitly conceding her original Complaint was insufficient.[1]  However, as described below, Plaintiff's new claims fare no better and this Court should dismiss the FAC in its entirety, without leave to amend.

*First*, Plaintiff has failed to state a claim under Count I for violation of the New Jersey Consumer Fraud Act.  Plaintiff does not identify any affirmative misrepresentation sufficient to sustain a claim, as any claims regarding the artificial nature of the Products' characterizing flavor are not false or misleading, but are plainly disclosed.  Moreover, Plaintiff's manufactured claim that Melitta misleads consumers into believing the Products are manufactured according to "European Preparation" lacks any basis in fact because Melitta does not make such a claim.  Finally, in an attempt to save any semblance of her complaint, Plaintiff's claims regarding the "quality" of Melitta's Products are classic examples of non-actionable puffery and cannot be used to sustain a claim.

---

[1] Plaintiff's new factual allegations and causes of action in the FAC is additionally improper because the deadline to amend the pleadings was July 29, 2016 pursuant to the Court's June 14, 2016 Case Management Order.  Dkt. No. 23.  The Court's order granting Melitta's motion to dismiss with leave to amend only permitted the filing of an "amended complaint correcting the deficiencies noted in this order" (Dkt. No. 38 at p. 17), not a wholesale revision of claims.

Likewise, Plaintiff's claim that Melitta intentionally omits that its Products contain acrylamide and/or propylene glycol[2] are subject to FDA's primary jurisdiction.  In fact, FDA is currently evaluating the existence of acrylamide in all coffee products.

Most suprisingly, despite the Court's explicit instruction in its Order Granting in Part and Denying in Part Melitta's motion to dismiss, Plaintiff failed to plead ascertainable loss with the requisite particularity under Federal Rule of Civil Procedure 9(b) ("Rule 9b"), as she failed to allege facts sufficient to demonstrate that the price she paid was more than the price for comparable products on the market.

*Second*, Plaintiff's Second claim under the New Jersey Truth-In-Consumer Contract, Warranty and Notice Act fails, as it requires a predicate violation to sustain the claim. Because all of Plaintiff's other claims fail as a matter of law for the reasons discussed herein, this claim necessarily also fails.

*Third*, Plaintiff's Third claim for breach of express warranty fails for the same reason as above, Plaintiff has not identified an affirmative representation sufficient to constitute an express warranty.

*Lastly,* Plaintiff's new, unauthorized, cause of action for unjust enrichment fails for the same reason this Court dismissed Plaintiff's implied warranty claim – lack of privity. Because Plaintiff did not confer a direct benefit to Melitta, she cannot sustain a claim for unjust enrichment.

As all of Plaintiff's claims for relief fail as a matter of law, the Court should dismiss the FAC in its entirety.

---

[2] Plaintiff's allegation regarding propylene glycol is false.

## II.     FACTUAL ALLEGATIONS IN THE FAC

### A.     The Parties

Melitta owns, manufactures, and sells various flavored coffee products across the United States.  FAC ¶¶ 1, 21.  Among the various products it sells are varieties of flavored coffee, including "Hazelnut Crème" flavored coffee and "French Vanilla" flavored coffee.  FAC ¶ 1.  These products are made with both natural and artificial ingredients to achieve their characterizing flavor.  *See* FAC ¶ 2, p. 12 (graphic of "Hazelnut Crème"), p. 15 (graphic of "French Vanilla").

Plaintiff Jill DeCerbo is a New Jersey resident who claims to have purchased Melitta's Hazelnut Crème and French Vanilla ground coffee in a can (together, the "Products").  FAC ¶¶ 22, 24, 67.  Without any additional specificity, Plaintiff claims that she purchased these Products "regularly over the past four years" and paid approximately $7.00 per can.  FAC ¶¶ 68, 71.

### B.     Plaintiff's Allegations Regarding Natural Characterizing Flavor

Following the Court's dismissal of Plaintiff's original Complaint, with leave to amend (Dkt. No. 38), Plaintiff has manufactured additional theories in addition to her original claims.  Plaintiff's original theory, which is still alleged in the FAC but has been subordinated, is that she was allegedly misled by the Products' labeling to believe that the Products were made with natural hazelnut and vanilla flavors rather than the artificial flavoring that is actually used.  FAC ¶¶ 43-53.  Specifically, Plaintiff alleges that she was deceived because the "Product's characterizing flavor was deceptively created or supplemented using artificial flavoring in addition to possible natural flavors, even though Defendant failed to disclose these facts on the Product's front label."  FAC ¶ 69.  Then, Plaintiff claims that a reasonable consumer "is not required to scrutinize the back of the product's label" to discover a false or misleading representation – in other words, that Melitta

unlawfully omitted language from the front of the label.  FAC ¶ 72.  Plaintiff alleges that Melitta misleads consumers by failing to identify on the front of the Product label that the Product is artificially flavored, in violation of FDA regulations.  FAC ¶¶ 72.

However, now that Plaintiff has finally included an accurate representation of the Products' labeling, Plaintiff cannot deny that the Products' packaging identifies that the Products are made with both natural and artificial flavors.  FAC pp. 12, 15.  As discussed in Melitta's original motion to dismiss the Complaint, the "front" of the label (as in the portion likely to be viewed by a consumer while on the store shelf) does not state or otherwise imply that the characterizing flavor is natural.  FAC pp. 3-4. There are no vignettes or pictures of hazelnuts or vanilla leaves on the packaging – but rather only a cup of coffee.  *Id*.  Moreover, the portion identifying the flavor of the coffee does not state that it is naturally flavored.  *Id*. Even the explanation at the bottom of the packaging accurately describes the Products' content.  *Id.* (The Hazelnut Crème product states "Buttery rich flavor of wild hazelnuts with a sweet creamy finish;" the French Vanilla product states "Rich, creamy smooth vanilla flavor with a delicious caramel finish;" and neither descriptive languages state that the flavoring is natural).

The Products' labels do clearly state that they are "100% Premium Coffee, with Natural and Artificial Flavors."  *Id*.  Because the Products at issue are sold in a circular container, the information regarding the characterizing flavor is immediately next to the "front" of the Product packaging, well within the reasonable line of sight for a prospective consumer.  *Id*.  Unlike other packaging methods, the statement that the Products are made with natural and artificial flavors is not on the back of the packaging.  *Id*.

**C.**     **Plaintiff's New Allegations Regarding The "Quality" Of The Products**

Recognizing that the "artificial ingredients" allegations were fatally flawed, Plaintiff has identified in her FAC numerous other statements on the Products labeling in an attempt

to save her claims.  FAC ¶¶ 27-33.  For example, Plaintiff identifies the following statements claiming that Melitta is misleading consumers regarding the quality of the Products: "At Melitta we use only the top 2% of Arabica beans harvested each year"; "For over 100 years, Melitta has been synonymous with premium quality"; "…use only the finest quality coffee beans"; "100% High Grown Premium Coffee"; "These higher quality beans…"; "…Melitta's unique quality is evident in every sip"; "Blended with 100% premium coffee …"; "100% Premium Coffee".  FAC ¶ 25 (b), (c), (d), (e), (f), (i), (k), (n); ¶ 26(b), (c), (d), (e), (f), (i), (k), (n) (collectively, "Quality Representations").

Plaintiff also attempts to manufacture a claim regarding a representation that Melitta does not make – that its Products are manufactured according to the "European Preparation." FAC ¶¶ 34-42.  Plaintiff's FAC admits that "European Preparation" is a term of art describing a specific type of brewing process that removes imperfect coffee beans by hand (separate and apart from a European type coffee, or flavor, or how the beans are roasted). FAC ¶ 35.  But the FAC does not allege – and cannot allege – that Melitta claims to utilize this process.  Instead, Plaintiff erroneously claims the following statements on the Products packaging misleads consumers to believe Melitta uses the "European Preparation" process: "We batch roast our beans and then grind them extra fine in true European fashion"; "This distinctive fine grind unlocks all the coffee's flavor…"; "European extra fine grind to release the best coffee flavor"; "The flavor of Europe in every cup".  FAC ¶ 25(g), (h), (l), (m); ¶ 26(g), (h), (l), (m) (collectively, "European References").

III.   LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a claim upon which relief may be granted.  The determination of whether a complaint states a plausible claim for relief is a content-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *See, e.g., APR Energy, LLC v. Pakistan Power*

*Resources, LLC*, 653 F.Supp.2d 1227, 1231 (M.D. Fla. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "unadorned, the-defendant-unlawfully-harmed-me" accusations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, Rule 9(b) requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  As such, Plaintiff's claims under the consumer protection laws (NJCFA and TCCWNA) are subject to Rule 9(b)'s heightened pleading requirements.  *See Nelson v. XACTA 3000 Inc.*, 2009 WL 4119176, * 3 (D.N.J. Nov. 24, 2009).

## IV. PLAINTFF HAS FAILED TO STATE A CLAIM UNDER COUNT I FOR A VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

The NJCFA provides in relevant part as follows:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

N.J. STAT. ANN. § 56:8-2.

In order to state a claim under the NJCFA, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Assoc., LLC v. Woodmont Bldr.*, 655 F. Supp. 2d 472, 504 (D. N. J. 2009) (*quoting Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009)).  Unlawful conduct may be alleged in the form of (a) affirmative acts, (b) knowing omissions, or (c) regulatory violations.  *Id.*  "To constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . ." *Id.*

Statutory fraud claims brought under the NJCFA that "sound in fraud" are subject to the heightened pleading requirements set forth in Rule 9(b).  *See Nelson v. XACTA 3000 Inc.*, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009).  Claims that fail to meet these stringent pleading requirements are subject to dismissal.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524, 526-27 (D.N.J. 2008) (dismissing NJCFA claim based on alleged fraudulent statements where plaintiffs failed to allege when the statements were made, or when plaintiffs were exposed to such statements); *see also Nelson*, 2009 WL 4119176, at *3 (dismissing NJCFA claim for failure to meet heightened pleading requirements of Rule 9(b)); *Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628, at *3-4 (D.N.J. Jan. 14, 2008) (same); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 512 (D.N.J. 1999) (same).

A. <u>**Plaintiff Failed To Allege An Affirmative Misrepresentation**</u>
1. *Plaintiff Has Not Identified Any Alleged False or Misleading Representations With Respect To Her "Natural" Or "European Preparation" Claims*

Affirmative act violations consist of an "affirmative misrepresentation . . . which is material to the transaction and which is a statement of fact, found to be false, [and] made to

induce the buyer to make the purchase." *Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 30-31 (App. Div. 2012).  In *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011), plaintiff asserted a claim that defendant committed affirmative acts of fraud and deception by persuading consumers to purchase Diet Coke Plus by including "the term 'Plus' and the language 'Diet Coke with Vitamins and Minerals'" on the packaging, which allegedly "suggested to consumers that the product was healthy and contained nutritional value, when it did not." 774 F. Supp. 2d at 703.  The court found that plaintiff's broad assumption that "defendant intended for Diet Coke Plus's vitamin and mineral content to deceive plaintiffs into thinking the beverage was 'healthy' . . . [w]ithout more specificity as to how defendant made false or deceptive statements of the soda" failed to sufficiently plead the "affirmative act" required for an NJCFA claim.  *Id.*

Here, just as in the original Complaint, Plaintiff alleges that Melitta "conceals its use of artificial flavors by placing a 'disclosure' on the label that reasonable consumers are unlikely to notice and unlikely to fully appreciate."  FAC ¶ 50.  Plaintiff does not allege that Melitta made an affirmative representation of fact that the Products were flavored solely with natural flavorings or, alternatively, that the Products were not artificially flavored.  There are no vignettes or pictures of hazelnuts or vanilla leaves on the packaging – only a cup of coffee.  FAC pp. 3-4.  Moreover, the portion identifying the flavor of the coffee does not state that it is naturally flavored.  *Id.*  Even the explanation at the bottom of the packaging accurately described the Products' content.  *See, e.g.*, *id.* (The Hazelnut Crème product states "Buttery rich flavor of wild hazelnuts with a sweet creamy finish;" the French Vanilla product states "Rich, creamy smooth vanilla flavor with a delicious caramel finish;" and neither description states that the flavoring is natural).  None of these allegations support a claim for an affirmative misrepresentation, let alone with the requisite specificity required by Rule 9(b).

Recognizing the fundamental flaw in her "Natural" claims (as the analysis above is nearly identical to the argument Melitta made in its motion to dismiss the original Complaint), Plaintiff now has manufactured an alternative theory that Melitta misleads its customers to believe it uses a specific brewing process called "European Preparation." FAC ¶¶ 34-42. However, Plaintiff has not identified a single representation where Melitta claims to use the European Preparation process which, as Plaintiff identified, is a specific method for discarding imperfect beans from the brewing process. FAC ¶36. The European References that Plaintiff identifies simply state that the ***flavoring*** and ***roasting process*** are derived from European traditions. Plaintiff does not allege that the European References are actually false. Rather, Plaintiff makes the illogical, conclusory jump that these references to European traditions somehow mislead consumers to believe that Melitta (whose parent company is in fact in Germany) utilizes European Preparation, which it does not claim to do. The words "European Preparation" – again a term of art in the coffee industry – appear nowhere on the relevant Melitta coffee labels. Because Plaintiff has not pled a claim for affirmative misrepresentation, Plaintiff's claim under the NCJFA must be dismissed. *See Mason*, 774 F. Supp. 2d at 703.

2. *Plaintiff's Alleged "Quality Representations" Are Non-Actionable Puffery*

"The NCJFA distinguishes between actionable misrepresentations of fact and 'puffery.'" *In re Toshiba America HD DVD Marketing and Sales Practices Litig.*, 2009 WL 2940081, at * 9 (D.N.J. Sept. 11, 2009). "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Id.* at *10; *see also Rodio v. Smith*, 123 N.J. 345, 352 (1991) (holding the slogan "You're in good hands with Allstate" is not a statement of fact or a misrepresentation that is actionable); *New Jersey Citizen Action v. Schering*, 367 N.J. Super. 8, 13-14 (App. Div. 2003) (finding that the statement "you . . . can lead a normal nearly symptom-free life again" cannot reasonably be

understood by consumers to guarantee total and universal effectiveness of the product); *Bonnieview Homeowners*, 655 F.Supp.2d at 508 (holding the statements "natural homesites" and "a great place to raise children" are too vague and general to be considered declarations of fact); *Tatum v. Chrysler Group LLC*, 2011 U.S. Dist. LEXIS 32362, at *10 (D.N.J. Mar. 28, 2011) (declaring that the statements "very safe vehicle" and "America's Most Trustworthy" are classic examples of puffery and not sufficient to create an express warranty).

Similarly, broad, non-specific assertions about a product's quality constitute mere puffery as a matter of law.  *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 458 n.10 (D.N.J. 2015) (finding that representations such as "designed to provide years of low-maintenance use and enjoyment," "dependable and attractive for years…," "years of outdoor living pleasure," "less work more life," and "get the same consistent, high-quality board to board" were nonactionable puffery); *Argabright v. Rheem Manufacturing Co.*, -- F. Supp. 3d. --, 2016 WL 4402819, at * 19 (D.N.J. Aug. 16, 2016) (representations such as "top-quality" and "superior" are too imprecise to be considered material and claims such as "meet or exceed rigorous industry and regulatory standards" are puffery because they fail to identify specific requirements or standard.)

In an attempt to salvage any portion of her claims, Plaintiff shifts the primary focus of her FAC to the Quality Representations, which are classic examples of non-actionable puffery.  Each of the representations identified as a Quality Representation relate to the notion that the Products are of "premium quality."  Quality is the most quintessential puffery representation, as it is vague, subjective, and incapable of determination by objective standards.  Who is to judge what is "premium quality"?  What may be premium quality to one person may be inferior quality to another.  Indeed, the court in *Argabright*, -- F. Supp. 3d. --, 2016 WL 4402819, at * 19, ***just recently dismissed a NJCFA cause of action because***

*claims such as "top quality" and "superior" are non-actionable puffery*.  *See also Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F.Supp.2d 1118, 1133 (D.Ariz. 2008) (noting that other courts have found the word "innovative" and "the generalized and vague statements of product superiority" to be non-actionable puffery) (citations omitted); *Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 725, 667 N.Y.S.2d 503 (N.Y.App.Div.1998) (defendant's advertisement claiming that car "would perform excellently" and was "of high quality" constituted mere puffery); *In re Sony HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (claims that televisions were of "superior" or "high" quality were considered "mere puffery" and did not create a reasonable expectation).  As such, Plaintiff's Quality Representations must likewise be dismissed as non-actionable puffery.[3]

**B.      Plaintiff's Claim For Material Omission Fails As A Matter Of Law**

To establish a knowing omission under the NJCFA, "plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.  *Judge v. Blackfin Yacht Corp.*, 357 N.J.Super. 418, 425 (2003); *Alban v. BMW of North America, LLC*, 2010 WL3636253, *9 (D.N.J. Sept. 8, 2010) (internal quotation marks omitted).  Allegations of a NJCFA violation based on a knowing omission requires the plaintiff to show "that the defendant acted with knowledge," and intent is an essential element of the fraud.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994); *accord, Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 31 (App. Div. 2012); *Alban*, 2010 WL3636253, at *9 (plaintiff's allegation that the defendant admitted knowledge of the purported defect more than three years after plaintiff purchased vehicle did not support NJCFA claim based on knowing omissions).

Here, Plaintiff's allegation that Melitta knowingly omitted reference to the fact that

---

[3] Similarly, to the extent Plaintiff's "European Preparation Representation" claims bleed the line into "Quality Representations," those claims should be dismissed as non-actionable puffery for the same reasons addressed above.

the characterizing flavor of the Products is from artificial ingredients is implausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Plaintiff argues that Melitta "conceals its use of artificial flavors by placing a 'disclosure' on the label that reasonable consumers are unlikely to notice and unlikely to fully appreciate." FAC ¶ 50.[4] However, a cursory review of the Products' label clearly identifies under the heading "Ingredients" that the Products are made with "Natural and Artificial Flavors." FAC pp. 12, 15. Moreover, because the Products at issue are packaged in cans (with circular labels), the "Ingredients" portion of the label identifying that the Products contain "Natural and Artificial Flavors" appears immediately adjacent to the "front" of the packaging. *Id.*

Contrary to Plaintiff's contention, Melitta did *not* omit this information from the Products' labeling. As discussed above, the front of the Products' packaging makes no representation that the Products' flavoring is derived from solely natural ingredients. FAC pp. 2-3. Nor does the Products' packaging contain any depictions relating to the flavor of the Products that would mislead a consumer into believing the flavor was derived solely from natural ingredients. *Id.* Plaintiff apparently just takes issue with the *location* of the words "Natural and Artificial Ingredients" on the Product labeling. But Plaintiff cannot plausibly allege that Melitta knowingly concealed that the Products' characterizing flavor is derived from natural ***and artificial*** ingredients. Even if Plaintiff could plausibly allege such an omission, Plaintiff cannot plausibly allege that Melitta ***intended to omit*** this language, as it clearly appears on the face of the Products' packaging. As such, Plaintiff's claim for a knowing omission must fail as a matter of law.

---

[4] Plaintiff's other allegations of material omissions are defective for different reasons and are addressed below in Sections IV.D & IV.E.

### C. Plaintiff Has Not And Cannot Claim A Regulatory Violation Under The NJCFA

As discussed in Melitta's original motion to dismiss the Complaint, Plaintiff cannot state a claim for a regulatory violation under the NCJFA. The New Jersey Supreme Court in *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 14-19 (1994) specifically stated that this third category of unlawful acts is "based on regulations enacted under *N.J.S.A.* 56:8-4." New Jersey Statute 56:8-4 states:

> To accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred upon him by this act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, ***promulgate such rules and regulations***, and prescribe such forms as may be necessary, which shall have the force of law.

N.J. STAT. ANN. § 56:8-4 (emphasis added).

The rules and regulations promulgated by the Division of Consumer Affairs under the foregoing authority are set forth in the New Jersey Administrative Code, Sections *13:45A-1.1 et seq.* None of the regulations contained in these code sections address the food labeling requirements of the FDA. Indeed, courts have held that violations of FDA regulations cannot serve as the basis for a claimed regulatory act violation of the NJCFA. *See, e.g., Mason,* 774 F. Supp. 2d at 703 n.2 (holding that a violation of an FDA regulation did not provide a basis for an unlawful practice: "The third category [of regulation violations] does not apply here, as only a violation of regulations enacted under N.J.S.A. 56:8–4 can serve as a basis for a claim of an unlawful practice under the NJCFA."). For example, in *Cox*, 138 N.J. at 20, the New Jersey Supreme Court considered whether violations of various state regulatory provisions promulgated under N.J.A.C. Section 13:45A constituted "regulatory violations."

Agreeing with the analysis presented above, the Court ordered that any amended complaint seeking relief under the NJCFA be accompanied by a separate memorandum of law addressing the validity of such claims in light of the *Cox* case cited above.  Dkt. No. 38, at p. 10, n. 2.  In response, Plaintiff's supplemental memorandum[5] claims that Melitta violated the NJCFA by violating New Jersey Administrative Code Section 8:21-1.3, which incorporates the applicable FDA labeling regulations.  Dkt. No. 43 at p. 3.[6]  Tellingly, Plaintiff still has not presented any authority supporting this position.  *See, id.*  In any event, as Plaintiff admits, the New Jersey regulation was enacted under the authority of New Jersey Statute Section 24:2-1 by the State Department of Health, not under Sections 13:45A-1.1, *et seq*, as required for a "regulatory violation" under the NJCFA.  *See* N.J. Admin. Code § 8:21-1.3; Dkt. No. 43 at p. 3.  Because the specific FDA labeling regulations were not incorporated by the Division of Consumer Affairs under N.J.S.A. 56:8-4 (or the only regulations promulgated thereunder – N.J.A.C. § 13:45A-1.1 *et seq.*), Melitta cannot have committed a "regulatory act violation" of the NJCFA as a matter of law.  Plaintiff's argument is but a failed attempt to avoid the clear and unambiguous law that a violation of FDA regulation cannot serve as the basis for a violation of the NJCFA.  *Mason,* 774 F. Supp. 2d at 703 n.2.

**D.**      **FDA Has Primary Jurisdiction Over Plaintiff's Claim That Melitta Failed To Disclose That The Products Contain Acrylamide.**

Under the doctrine of primary jurisdiction, the FDA – as the agency entrusted by Congress to regulate food and beverage products – is uniquely qualified and empowered to make decisions about labeling acrylamide in coffee.  *See Far East Conference v. United*

---

[5] Plaintiff's supplemental memorandum was filed late, as the Court ordered that it be filed at the same time the amended complaint was filed (Dkt. No. 43 at p. 10, n. 2), yet it was not filed until the next day.

[6] Plaintiff also mistakenly argues that the NJCFA is codified at N.J. Stat Ann. § 24:1-41, which is the section of the New Jersey Code governing Food and Drugs.  Dkt. No. 43 at p. 3.  The NJCFA is codified at N.J. Stat. Ann. § 56:1 *et seq.*

*States*, 342 U.S. 570, 574 (1952).  Primary jurisdiction calls for "judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *Cheney State Coll. Faculty v. Hufstedler*, 703 F. 2d 732, 736 (3d Cir. 1983).  "Under the doctrine of 'primary jurisdiction,' when an activity is arguably subject to an administrative agency's expertise, such as the FDA, federal courts must defer to the exclusive competence of that agency."  *United States v. W.P.R. Co.*, 352 U.S. 59, 63 (1956).  Primary jurisdiction has been used to defer to FDA decisions regarding the complex subject matter of regulating the marketing of food and drug products.  *See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F. 2d 222, 231-32 (3d. Cir. 1990) (holding that whether listing an inactive ingredient on a product "is not properly decided as an original matter by a district court in a Lanham Act case"); *Cohen v. McDonald's Corp.*, 348 Ill. App. 3d 627 (2004) (dismissing claim seeking to "fill in holes" in FDA regulations when FDA had yet to do so); *Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at * 4 (D.N.J. June 15, 2010) (refusing to define whether a particular ingredient as "natural" as that issue is within the specific purview of the FDA).

In determining whether to abstain under the doctrine of primary jurisdiction, courts consider the following factors: "(1) whether the question at issue is within the conventional experience of judges; (2) whether the question at issue lies peculiarly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a danger of inconsistent rulings disruptive of the statutory scheme; and (4) whether a prior application to the agency has been made."  *IPCO Safety Corp. v. WorldCom, Inc.*, 944 F. Supp. 352, 356 (D.N.J. 1996).

All of the required factors for abstention are present here because the FDA is currently evaluating acrylamide in coffee products and, earlier this year, concluded that additional investigation is required.  RNJ, Ex. A.  In March 2016, FDA published "Guidance

for Industry – Acrylamide in Foods." *Id.* FDA found that acrlyamide is a naturally occurring chemical formed during high temperature cooking in many types of food products. *Id.* at p. 3. The guidance document, which was intended to assist food and beverage product manufacturers in reducing acrylamide in their products, expressly concluded that "[a]crylamide reduction is an area of ongoing research, and some approaches discussed may still be at a research stage, rather than in general use." *Id.* FDA also concluded that it is "not suggesting maximum recommended levels for acrylamide in various products at this time." *Id.*

Indeed, FDA's guidance document specifically discusses acrylamide in coffee products, concluding that "[l]imited information is available on factors know to affect acrylamide concentrations in coffee." *Id.* at pp. 26-27. FDA found that roasting methods and length of storage can affect the level of acrylamide in coffee. *Id.* at p. 27. Ultimately, FDA concluded that a mitigation measure for reducing acrylamide in coffee "is not yet available." *Id.*

Based on FDA's current investigation into reducing acrylamide in coffee products, this Court should abstain from exercising jurisdiction over that asserted issue in this case. Plaintiff's allegations apply not just to Melitta, but to the coffee industry as a whole, as Plaintiff admits that literally every coffee on the market contains acrylamide. FAC ¶¶ 59-65. As such, whether the entire coffee industry is required to disclose the potential for acrylamide in its coffee is not an issue within the conventional experience of judges, but is a question that lies uniquely with the FDA. FDA has been evaluating the existence of acrylamide in coffee since 2002, including the industry guidance in March 2016 discussed above (RJN, Ex. A), but has yet to reach a conclusion on requisite product labeling. The Court's intervention on FDA's ongoing investigation creates a danger of inconsistent rulings that would disrupt FDA's statutory scheme.

Despite FDA's clear knowledge of the existence of acrylamide in coffee products, FDA has not adopted any regulation or guidance document requiring (or even recommending) that coffee producers disclose the fact acrylamide may be present in the product.  This Court should not do so here.

### E.     Plaintiff's Claim That Melitta's Products Contain Propylene Glycol Lacks Any Basis And Is Sanctionable Conduct

In addition to the preempted acrylamide claim discussed above, Plaintiff claims that Melitta's Products contain propylene glycol.  FAC, ¶ 57-58.  While this is not a motion for summary judgment, and Melitta is aware that evidence may not be presented here, Melitta is compelled to respond to Plaintiff's blatantly false allegations.  Melitta's products do not, and have never, contained propylene glycol.  Plaintiff's own exhibit establishes the reckless nature of Plaintiff's FAC.  Exhibit 5 to the FAC is an article from *__1998__* discussing, generally, a process for extracting artificial vanilla flavor.  The article, which is not specific to Melitta or its manufacturing process, even identifies that "Vanilla extract is extracted from the beans by using solvents *such as alcohol, propylene glycol, or glycerine*."  FAC, Ex. 5, p. 2 (emphasis added).  Plaintiff has no basis to assert that Melitta uses such a process and, if so, which of the various agents are used in its manufacturing process; and even further, whether any trace of those agents are present in the finished product.  Plaintiff's dangerous and wild accusations cannot go unnoticed.  Once Melitta is able to propound discovery on this issue to prove Plaintiff lacks any basis for this claim, it expects to file a Rule 11 motion on this issue.

In any event, Plaintiff's allegation regarding the supposed inclusion of propylene glycol is subject to the FDA's primary jurisdiction for the same reasons as discussed in Section IV.D above.

### F.     Plaintiff Failed To Plead Ascertainable Loss With Particularity.

Shockingly, Plaintiff's allegations with respect to ascertainable loss, a necessary

element of her NJCFA cause of action, are nearly identical to the pleading this Court determined to be deficient in the original Complaint.  Dkt. No. 38, at 11.  As Melitta pointed out in its motion to dismiss the Complaint, simply pleading payment of the relevant purchase price does not demonstrate an ascertainable loss.  *See Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628, at *3-4 (D.N.J. Jan. 14, 2008) (dismissing NJCFA claim for failure to meet Rule 9(b) pleading requirements, and stating "the Court finds that Plaintiff's payment of the purchase price of the Trident System does not meet the ascertainable loss requirement.")

Moreover, bare allegations that other comparable products cost less are also insufficient to establish an ascertainable loss.  *See In re Toshiba Amer. HD DVD Marketing & Sales Prac. Lit.,* 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (NJCFA claim did not meet Rule 9(b) pleading requirements where plaintiffs failed to allege how much regular DVD players cost at the time, "i.e., how much of a 'premium' they claim to have paid for their HD DVD Players"); s*ee also Shelton v. Restaurant.com Inc.,* 2010 WL 2384923, at *4 (D.N.J. June 15, 2010) ("the pleadings are devoid of any facts which quantify or measure what loss was suffered"); *In re Ford Motor Co. E–350 Van Products Liability Litigation (No. II),* 2010 WL 2813788, at *28 (D.N.J. July 9, 2010) ("The allegations set forth by the New Jersey Plaintiffs are replete with generalized statements concerning loss; however, the evidence submitted by the New Jersey Plaintiffs contains no specific proofs such that the losses could be quantified or measured."); *Shannon v. Howmedica Osteonics Corp.,* 2010 WL 421096, at *3 (D.N.J. Feb. 1, 2010) (holding that allegation of purchase price, without other comparison information, is not enough (citing *Parker,* 2008 WL 141628)).

Indeed, this Court agreed with the above-recited standard for pleading ascertainable loss, dismissing Plaintiff's NJCFA cause of action because:

> Here, much like in *Toshiba* and *Mladenov*, the Complaint lacks well-pled factual allegations of how much the Plaintiff paid for the Defendant's products, the supposed value of what they received, and how much comparable products sold for at the time.

To the contrary, the Plaintiff cursorily alleges that she paid too much for the Defendant's products, but fails to plead how much of a 'premium price' she paid for the products at issue. [quoting allegations in Complaint].   Consequently, the Complaint fails to satisfy the ascertainable loss requirement under the NJCFA and must be dismissed.

Dkt. No. 38, at p. 11.

Plaintiff refused to heed the Court's admonition – indeed, its express order – as the FAC sets forth the identical insufficient allegations as in the original Complaint.  A side by side comparison of Plaintiff's allegations demonstrate this fact:

| **Original Complaint** | **FAC** |
|---|---|
| ¶ 37 – As reasonable consumers, Plaintiff and the class purchased the Products believing they had qualities they sought, based on the Products' deceptive labeling and unlawful failure to disclose that they were, even partially, artificially flavored. | ¶ 80 – As reasonable consumers, Plaintiff and the class purchased the Products believing they had qualities they sought, based on the Products' deceptive labeling and unlawful failure to disclose that they were, even partially, artificially flavored. |
| ¶ 38 – Plaintiff and the class lost money as a result of Defendant's conduct because they purchased Products that were not actually flavored with natural flavorings comprising the characterizing flavors, or were only partially flavored with natural ingredients, because the Products' labels failed to disclose this and further implied that the Product contained only natural ingredients.  Had Defendant no violated the law, Plaintiffs and the class would not have been injured. | ¶ 81 – Plaintiff and the class lost money as a result of Defendant's conduct because they purchased Products that were not actually flavored with natural flavorings comprising the characterizing flavors, or were only partially flavored with natural ingredients, because the Products' labels failed to disclose this and further implied that the Product contained only natural ingredients.  Had Defendant no violated the law, Plaintiffs and the class would not have been injured. |
| ¶ 39 – Plaintiff and the class would not have purchased the Products absent Defendant' [sic] misrepresentations and omissions, or would have paid much less for them. | ¶ 82 – Plaintiff and the class would not have purchased the Products absent Defendant' [sic] misrepresentations and omissions, or would have paid much less for them. |
| ¶ 40 – The Products cost more than similar products without the misleading labeling and non-disclosures, and would have cost less absent Defendant' [sic] false and misleading statements and omissions.  Thus, the Products were worth less than what Plaintiff and the class paid for them. | ¶ 83 – The Products cost more than similar products without the misleading labeling and non-disclosures, and would have cost less absent Defendant' [sic] false and misleading statements and omissions.  Thus, the Products were worth less than what Plaintiff and the class paid for them. |
| ¶ 41 – Like most consumers, Plaintiff and class members are busy persons and cannot reasonably | ¶ 84 – Like most consumers, Plaintiff and class members are busy persons and cannot |

| inspect every ingredient of every food that they purchase, and were unaware that the Products contained artificial flavoring when they purchased them. | reasonably inspect every ingredient of every food that they purchase, and were unaware that the Products contained artificial flavoring when they purchased them. |
|---|---|
| ¶ 42 – Plaintiff and the class lost money as a result of Defendant's unlawful behavior. Plaintiff and the class altered their position to their detriment and suffered loss in an amount equal to the amount paid for the Products. | ¶ 85 – Plaintiff and the class lost money as a result of Defendant's unlawful behavior. Plaintiff and the class altered their position to their detriment and suffered loss in an amount equal to the amount paid for the Products. |

Just as in the original Complaint, Plaintiff conclusorily claims that the Products cost more than similar products without the misleading labeling and therefore, were worth less than what Plaintiff paid for them.  FAC, ¶ 83.  Importantly, Plaintiff fails to allege how much any comparable product would cost.  Plaintiff's formulaic recitation of the type of information required to plead ascertainable loss is insufficient under Rule 9(b) and New Jersey case law cited above.  *See Parker,* 2008 WL 141628, at *3-4 (dismissing NJCFA claim for failure to meet Rule 9(b) pleading requirements, and stating "the Court finds that Plaintiff's payment of the purchase price of the Trident System does not meet the ascertainable loss requirement").  Even with explicit direction from the Court regarding the factual pleading necessary to sustain a cause of action under the NJCFA, as well as Melitta's thorough recitation of the legal standard in its first motion to dismiss, Plaintiff has failed to adequately allege ascertainable loss.  As such, Plaintiff's NJCFA cause of action must be dismissed again – this time without leave to amend.

**V.     PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT II FOR A VIOLATION OF THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT**

The New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA") provides:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or

> sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State of Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. § 56:12–15.

To state a claim under the TCCWNA, a plaintiff must allege that: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Watkins v. DineEquity, Inc.,* 591 Fed.Appx. 132, 135 (3d Cir. 2014); *Bosland v. Warnock Dodge, Inc.,* 933 A.2d 942 (App.Div.2007), *aff'd,* 964 A.2d 741 (2009).

The TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights. *Watkins,* 591 Fed.Appx. at 134. Accordingly, Plaintiff's TCCWNA claim relies upon the same unlawful conduct alleged to support the NJCFA claim. *See Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) ("Plaintiffs bring their TCCWNA claims under two theories: Defendants' alleged violation of Plaintiffs' rights under the CFA, and Defendants' alleged violation of Plaintiffs' rights under 21 C.F.R. § 101.95. . . . Since the Court finds that Plaintiffs' have failed to state viable CFA claims, Plaintiffs' TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations.").

Plaintiff's TCCWNA claim fails because each other claim in the Complaint also fails. Because Plaintiff's TCCWNA claim is premised derivatively on other purported statutory or warranty claims, the independent failure of these claims likewise dooms the TCCWNA claim. *See* FAC ¶ 132 ("Defendant's conduct as described herein violated Plaintiff's and the Class's clearly established legal right to have the Products labeled in accordance with state law."). As described herein, Plaintiff has failed to state a claim for violation of the NJCFA,

breach of express warranty or unjust enrichment.  Further, Plaintiff's reliance on violations of FDA regulations do not create liability under the TCCWNA.  *See Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) ("Plaintiffs' TCCWNA claims also fail to the extent they rely on alleged violations of 21 C.F.R. § 101.95."); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.,* 193 F.3d 781, 788 (3d Cir.1999) ("It is well settled ... that the FDCA creates no private right of action.").  As such, Plaintiff's claim under the TCCWNA must be dismissed.

Again, despite not being requested from the Court and without any citation to authority, Plaintiff's supplemental brief in support of her FAC claims that an alleged violation under the New Jersey regulation incorporating the FDA regulations is sufficient to sustain a claim under the TCCWNA.  Dkt. No. 43, at p. 5.  This argument fails for the same reasons discussed above.  Plaintiff is simply trying to seek an end around the clear prohibition against bringing claims under the Food, Drug and Cosmetic Act that Plaintiff is not otherwise permitted to bring.  However, the court in *Mladenov*, 124 F. Supp. 3d at 380, made it clear that "[n]either can Plaintiffs here use TCCWNA to bootstrap a FDCA claim they could not otherwise bring."  Not surprisingly, Plaintiff has not cited any authority supporting her position, because it is contrary to the established law in New Jersey.  Plaintiff's TCCWNA claim must, therefore, be dismissed.

## VI.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT III FOR BREACH OF EXPRESS WARRANTY

Plaintiff's common law cause of action for breach of express warranty also fails.  To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege that: (1) Defendant made an affirmation, promise or description about the product; (2) this affirmation, promise or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation, promise or description.

*Dzielak v. Whirlpool Corp.,* 26 F.Supp.3d 304, 324 (D.N.J. 2014). Plaintiff is required to plead the existence of an express warranty with sufficient facts to support the claim. *Simmons v. Stryker Corp.*, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008). The failure to identify specific representations constituting an affirmation of fact is sufficient grounds to dismiss a claim for breach of express warranty. *Parker,* 2008 WL 141628, at * 6.

An otherwise general statement may create a warranty if it could be reasonably understood to constitute a representation that the product possesses a certain quality. *Dzielak*, 26 F.Supp.3d at 324 (quoting *L.S. Health & Son, Inc. v. AT&T Info, Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993)). However, it is the plaintiff's burden to allege that such a representation could be reasonably understood by consumers to create an express warranty. *Id.* at 325.

For the same reasons as discussed in Section IV above, Plaintiff has not identified any actionable representations. Without an affirmative representation, there cannot be an express warranty.

## VII.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT IV FOR UNJUST ENRICHMENT

To state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiffs expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014). However, to sustain a claim for unjust enrichment, a plaintiff must confer a direct benefit upon the defendant. *Id.* Similar to the privity requirement, a plaintiff does not confer a direct benefit upon a product manufacturer where the consumer product was purchased through a retailer. *Id.*; *see also Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) ("Since Plaintiffs have failed to allege that they purchased the Products directly from Defendants, they cannot rightfully

expect any remuneration from Defendants, since they never directly conferred a benefit on Defendants."); *Nelson v. Xacta 3000 Inc.*, 2009 WL 4119176, at * 7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim because the plaintiff purchased the product from a retailer, not the manufacturer); *Cooper v. Samsung Elec.*, 2008 WL 4513924, at * 10 (D.N.J. Sept. 29, 2008) (dismissing unjust enrichment claim because there was no relationship conferring any direct benefit on the manufacturer).

In addition to the fact that Plaintiff's unjust enrichment cause of action is improper, as Plaintiff did not obtain leave to add a cause of action, her claim for unjust enrichment fails as a matter of law for the same reasons this Court already dismissed her claim for breach of implied warranty – lack of privity.  Plaintiff admits that she purchased the Products from a retail store in New Jersey, not from Melitta directly.  FAC, ¶ 68.  As such, Plaintiff is not in privity of contract with Melitta, has not conferred any benefit directly to Melitta, and cannot state a claim for unjust enrichment under New Jersey law.

**VIII.   <u>CONCLUSION</u>**

Based on the foregoing, Melitta respectfully requests that the Court dismiss Plaintiff's FAC in its entirety without further leave to amend.

Respectfully submitted,

*/s/ Matthew M. Gurvitz* _____
Daniel S. Silverman (*admitted pro hac vice*)
Matthew M. Gurvitz (*admitted pro hac vice*)
**VENABLE LLP**
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 229-9930
Facsimile:  (310) 229-9901
Email:  DSSilverman@Venable.com
Email:  MMGurvitz@Venable.com

Michael S. Hooker
Florida Bar No. 330655
Guy P. McConnell
Florida Bar No. 472697
**PHELPS DUNBAR LLP**
100 S. Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone:  (813) 472-7550
Facsimile:  (813) 472-7570
Email:  Michael.Hooker@phelps.com
Email:  Guy.McConnell@phelps.com

**COUNSEL FOR DEFENDANT MELITTA USA INC.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have on this 5th day of December, 2016, electronically filed **DEFENDANT MELITTA USA INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants.

*/s/ Matthew M. Gurvitz*
Matthew M. Gurvitz